1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10

                          ----oo0oo----

11

12   916 RADIO, a California non-
     profit corporation; SAUNDRA
13   "DJ RENE E" GRIFFIN, and KEVIN
     ARDOIN,
14                                    NO. CIV. 05-CV-00719 FCD DAD
             Plaintiffs,
15
16        v.                          MEMORANDUM AND ORDER

     FEDERAL COMMUNICATIONS
17   COMMISSION,

18           Defendant.

19                        ----oo0oo----

20       This matter is before the court on defendant Federal

21  Communications Commission's ("defendant" or "FCC") motion to

22  dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and

23  12(b)(6).  By this motion, defendant seeks to dismiss plaintiffs'

24  complaint on the grounds that plaintiffs lack standing to pursue

25  their claims, plaintiffs' claims are substantively meritless,

26  and/or this court lacks subject matter jurisdiction.[1]

27  _____

28       [1]    This court previously denied the FCC's motion to
     dismiss pursuant to Federal Rules of Civil Procedure 8(a).  (Mem.
     & Order, filed Sept. 1, 2005.)

1    For the reasons set forth below, the court GRANTS
2 defendant's motion to dismiss in its entirety.[2]

### BACKGROUND[3]

4    Plaintiffs are a group of persons and organizations engaged
5 in "microradio" (low-power FM Radio) broadcasting in Sacramento,
6 California.  Plaintiff 916 Radio is a nonprofit educational
7 corporation that has operated a microradio station in
8 Sacramento's midtown district since May 19, 2004.  Plaintiff DJ
9 Renee is a member of plaintiff 916 Radio and is a DJ on Saturday
10 mornings from 10:00 a.m. to 12:00 p.m.  Plaintiff Kevin Ardoin is
11 a resident of Sacramento, California and a regular listener of
12 plaintiff 916 Radio's microradio broadcasts.

13    Plaintiffs allege that on January 3, 2005, Will Major
14 ("Major"), 916 Radio's manager, answered a phone call from a
15 person representing the FCC.  Major was advised that the call was
16 in response to several complaints suggesting that 916 Radio was a
17 "pirate radio station."  Major explained to the FCC caller that
18 916 Radio was complying with all LPFM-318 (federal) regulations.
19 Additionally, Major explained that the FCC Media Department had
20 told 916 Radio that it was legally allowed to operate in its
21 present manner.  The FCC caller told Major that if anyone else
22 called to complain, he would refer the person to 916 Radio
23 directly.

24

25 ─────────────────

26    [2]    Because oral argument will not be of material
assistance, the court orders the matter submitted on the briefs.
27 E.D. Cal. L.R. 78-230(h).

28    [3]    The background section is based on the allegations of
plaintiffs' complaint, filed April 12, 2005.

1    Plaintiffs further allege that on January 5, 2005, federal
2  agents Glenn Phillips ("Phillips") and Thomas Hora ("Hora") came
3  to 916 Radio's premises and advised Major that a "non-specific
4  complaint" had been filed against 916 Radio.  Major gave Phillips
5  and Hora permission to search the premises.  Major explained that
6  the FCC Media Center had told the station that it was "okay" as
7  long as it complied with LPFM-318 regulations.  Phillips and Hora
8  asked to see the radio transmitter, and after viewing it, told
9  Major that the transmitter was out of compliance and not FCC
10  certified.  Phillips and Hora then recommended that Major
11  terminate broadcasting, adding that further broadcasting could
12  result in a $100,000 fine, one year of imprisonment, or
13  confiscation of the broadcasting equipment.  Phillips and Hora
14  left a "Notice of Unlicensed Radio Operation" which indicated the
15  station's power output exceeded the allowable limits.

16    Finally, plaintiffs allege that on January 12, 2005, an FCC
17  agent or agents returned to 916 Radio premises, but Major refused
18  to open the door.  The agent or agents then left another "Notice
19  of Unlicensed Radio Operation" which indicated 916 Radio's output
20  exceeded the allowable limits, and 916 Radio refused to allow
21  inspection of the premises.

22    Thereafter, on April 12, 2005, plaintiffs filed the instant
23  complaint against the FCC.  Plaintiffs allege (1) that 47 U.S.C.
24  § 510 as applied to microradio stations without procedural
25  safeguards violates the 1st, 4th, and 5th Amendments to the
26  United States Constitution; (2) that the FCC's enforcement policy
27  of ordering microbroadcasters to cease and desist broadcasting
28  activities without procedural safeguards violates the 1st, 4th,

1   and 5th Amendments to the United States Constitution; (3) that
2   the FCC's enforcement policy of demanding that microradio
3   stations cease and desist without an administrative hearing
4   violates 47 U.S.C. §§ 312(c)-(d); and (4) that the FCC's failure
5   to provide efficient, reasonable, and fair licensing procedures
6   for low-powered radio stations is an abuse of discretion under
7   the Administrative Procedures Act, 5 U.S.C. § 702.

8        The FCC now moves to dismiss all of plaintiffs' claims,
9   arguing with respect to claims one through three, that plaintiffs
10  lack standing to challenge Communications Act provisions and FCC
11  procedures and/or that plaintiffs' claims are substantively
12  meritless, and with respect to plaintiffs' fourth claim, that the
13  court lacks subject matter jurisdiction and/or plaintiffs lack
14  standing.

15                          **STANDARD**

16  **I.   Rule 12(b)(1)**

17       Under Rule 12(b)(1) of the Federal Rules of Civil Procedure,
18  a party may by motion raise the defense that the court lacks
19  "jurisdiction over the subject matter" of a claim.  Fed. R. Civ.
20  P. 12(b)(1).  It is well established that the party seeking to
21  invoke the jurisdiction of the federal court bears the burden of
22  establishing the court's subject matter jurisdiction.  Stock
23  West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir.
24  1989).

25       A motion to dismiss for lack of subject matter jurisdiction
26  may attack the allegations of jurisdiction contained in the
27  complaint as insufficient on their face to demonstrate the
28  existence of jurisdiction ("facial attack").  Thornhill

4

1  Publishing Co. v. General Tel. & Elec. Corp., 594 F.2d 730, 733
2  (9th Cir. 1979).  If the motion constitutes a facial attack, the
3  court must consider the factual allegations of the complaint to
4  be true.  Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir.
5  1981).

6  **II.  <u>Rule 12(b)(6)</u>**

7       On a motion to dismiss pursuant to Rule 12(b)(6) of the
8  Federal Rules of Civil Procedure, the allegations of the
9  complaint must be accepted as true.  <u>Cruz v. Beto</u>, 405 U.S. 319,
10 322 (1972).  The court is bound to give plaintiff the benefit of
11 every reasonable inference to be drawn from the "well-pleaded"
12 allegations of the complaint.  <u>Retail Clerks Int'l Ass'n v.</u>
13 <u>Schermerhorn</u>, 373 U.S. 746, 753 n.6 (1963).  Thus, the plaintiff
14 need not necessarily plead a particular fact if that fact is a
15 reasonable inference from facts properly alleged.  <u>See</u> <u>id.</u>

16      Given that the complaint is construed favorably to the
17 pleader, the court may not dismiss the complaint for failure to
18 state a claim unless it appears beyond a doubt that the plaintiff
19 can prove no set of facts in support of the claim which would
20 entitle him or her to relief.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45
21 (1957); <u>NL Indus., Inc. v. Kaplan</u>, 792 F.2d 896, 898 (9th Cir.
22 1986).

23      Nevertheless, it is inappropriate to assume that plaintiff
24 "can prove facts which it has not alleged or that the defendants
25 have violated the . . . laws in ways that have not been alleged."
26 <u>Associated Gen. Contractors of Cal., Inc. v. Cal. State Council</u>
27 <u>of Carpenters</u>, 459 U.S. 519, 526 (1983).  Moreover, the court
28 "need not assume the truth of legal conclusions cast in the form

1   of factual allegations." <u>United States ex rel. Chunie v.</u>
2   <u>Ringrose</u>, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

3       In ruling upon a motion to dismiss, the court may consider
4   only the complaint, any exhibits thereto, and matters which may
5   be judicially noticed pursuant to Federal Rule of Evidence 201.
6   See <u>Mir v. Little Co. Of Mary Hosp.</u>, 844 F.2d 646, 649 (9th Cir.
7   1988); <u>Isuzu Motors Ltd. v. Consumers Union of United States,</u>
8   <u>Inc.</u>, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

9                            **ANALYSIS**

10  **I.   Claims One Through Three**

11      The FCC asserts that plaintiffs lack standing to pursue
12  claims one through three which allege (1) that 47 U.S.C. § 510
13  ("§ 510") as applied to microradio stations without procedural
14  safeguards violates the 1st, 4th, and 5th Amendments to the
15  United States Constitution; (2) that the FCC's enforcement policy
16  of ordering microbroadcasters to stop and/or cease and desist
17  broadcasting activities without procedural safeguards violates
18  the 1st, 4th, and 5th Amendments to the United States
19  Constitution; and (3) that the FCC's enforcement policy of
20  demanding that microradio stations stop and/or cease and desist
21  without an administrative hearing violates 47 U.S.C. §§ 312(c)-
22  (d) ("§ 312").

23      Article III of the United States Constitution limits
24  jurisdiction of federal courts to deciding cases and
25  controversies.  <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 559
26  (1992).  The doctrine of standing is a core component of the
27  case-or-controversy requirement.  <u>Id.</u> at 560.  The litigant
28  invoking federal jurisdiction must establish the three minimum

                                6

requirements of standing: (1) a litigant must have suffered an actual and concrete injury consisting of an invasion of a legally protected interest; (2) there must be a causal connection between the injury and the conduct of which the litigant complains; and, (3) there must be a likelihood that the injury will be redressed by a favorable judicial decision.  Id. at 560-61.

Plaintiffs' claims here mirror those alleged by the plaintiffs in Free Speech v. Reno, 1999 WL 146643 (S.D.N.Y. Mar. 18, 1999), *affirmed per curiam,* 200 F.3d 63 (2nd Cir. 1999) (holding district court "properly dismissed plaintiffs' as-applied challenges to the [FCC] enforcement provisions [§§ 312 and 510] for lack of standing").  There, the plaintiffs began operating an unlicensed radio station in November 1995.  Id. at *1.  In March 1998, an FCC official visited the station and notified the plaintiffs that the FCC had received a complaint that the plaintiffs' radio station was interfering with the signal of a licensed radio station.  Id.  The FCC official stated he would return to seize the station's broadcasting equipment if the plaintiffs did not stop broadcasting.  Id.  On March 6, 1998, the plaintiffs decided to go off the air.  Id.  Five days later, the FCC official returned to the plaintiffs' station and shut off the building's electricity.  Id.  On April 15, 1998, plaintiffs resumed broadcasting from a new location and shortly thereafter filed their complaint against the defendants Janet Reno and the FCC.  Id.

The Free Speech plaintiffs alleged, inter alia, (1) that the FCC property forfeiture statute, § 510, as applied by the defendants to microradio stations, violated the First, Fourth,

7

1  and Fifth Amendments; (2) that the FCC enforcement policy

2  regarding cease and desist orders created a system of formal and

3  informal prior restraints and thereby violated the First, Fourth,

4  and Fifth Amendments; and (3) that the FCC enforcement policy of

5  executing cease and desist orders without serving violators an

6  order to show cause at least 30 days before an administrative

7  hearing violated §§ 312(c)-(d).  Id. at *1-2.  The defendants

8  contended that the plaintiffs lacked standing to pursue these

9  claims because they failed to show that they had suffered an

10 "injury-in-fact," establishing the first element for

11 constitutional standing.  Id. at *3.

12      The district court agreed with the defendants and held that

13 the plaintiffs failed to allege facts sufficient to establish

14 that they had suffered an injury-in-fact under the challenged

15 provisions.  Id. at *4.  The court reasoned that the threat was

16 too attenuated to provide the plaintiffs with a basis for

17 standing.  Id.  Moreover, the court found that the issues raised

18 were not ripe for judicial review.  Id.  According to the court,

19 without a particularized injury, the plaintiffs' claims presented

20 only an "abstract constitutional grievance."  Id.  The court

21 concluded that because the defendants had not *applied* in rem

22 forfeiture or cease and desist proceedings to the plaintiffs,

23 they lacked standing to raise as-applied challenges to the FCC

24 provisions.  Id. at *4-5.

25      Similarly, in the instant case, plaintiffs have failed to

26 demonstrate anything more than an "abstract constitutional

27 grievance."  When plaintiffs filed their complaint on April 12,

28 2005, they had received two "Notices of Unlicensed Radio

Operation."  Each notice stated in part:

> You are hereby *warned* that operation of radio transmitting equipment without a valid radio station authorization and/or refusal to allow inspection of your radio station constitutes violation of the Federal laws cited above and *could* subject the owner of this illegal operation to the several penalties provided, including, but not limited to, a maximum criminal fine of $100,000 and/or one year imprisonment, or arrest of the equipment for the first offense (see 49 U.S.C. §§ 501, 503 & 510).

(Compl., filed Apr. 12, 2005, Exhs. 1 & 2) (emphasis added).  The notices thus *warned* of the *potential* penalties for continuing to operate the radio station without a license.  Nothing in the notices indicated that plaintiffs were being penalized pursuant to one of the challenged statutory sections.  Accordingly, plaintiffs have failed to allege a particularized "injury-in-fact" under the challenged provisions and therefore lack standing to pursue claims one through three.  Free Speech, 1999 WL 146643, at *4.

Alternatively, with respect to claims two and three, this court also lacks jurisdiction over plaintiffs' claims.  As stated in Free Speech, the doctrine of primary jurisdiction requires that a party who wishes to challenge an FCC policy or practice first do so through a motion for a declaratory ruling from the FCC itself.  1999 WL 14773, at *2; FCC v. ITT World Commc'ns, 466 U.S. 463, 468 n.5 (1984) (stating that respondents should have challenged agency's conduct by motion before agency for declaratory ruling).[4]  Plaintiffs second and third claims attack

---

[4]   The Communications Act grants exclusive authority to
(continued...)

"the FCC's enforcement policy and practice of demanding . . . that microbroadcasters immediately stop and/or cease and desist all broadcasting activities . . . ."  (Compl. ¶¶ 55, 57). Because plaintiffs assert claims against FCC policies and practices, this court lacks jurisdiction over claims two and three.

Accordingly, plaintiffs have failed to show that they have suffered a particularized injury under the subject FCC provisions sufficient to confer standing.  Alternatively, with respect to claims two and three, the court lacks jurisdiction.  For these reasons, the FCC's motion to dismiss claims one through three is GRANTED.[5]

---

[4](...continued)
the FCC to license radio broadcasting in the United States.  47 U.S.C. §§ 151, 301.  In order to obtain a license, a party seeking to broadcast must submit a written application to the FCC containing information required by 47 U.S.C. § 308 and other FCC-prescribed qualifications.  If an applicant for a broadcast license does not meet the FCC's requirements, it may request a waiver of the relevant rules in conjunction with its application for a license.  47 C.F.R. § 1.3.  If the FCC denies an application for a license or waiver of its rules, the applicant must appeal to the United States Court of Appeals for the District of Columbia.  47 U.S.C. § 402(b)(1); United States v. Dunifer, 997 F. Supp. 1235, 1238 n.4 (N.D. Cal. 1998).  A party wishing to challenge a final order of the FCC may do so in any court of appeals.  47 U.S.C. § 402(a); 28 U.S.C. 2342.  Courts have interpreted "order" to also mean FCC regulations, rules, policies, procedures, decisions, and actions.  See Dunifer, 997 F. Supp. at 1238 (stating that exclusive jurisdiction over any challenge to FCC regulations is vested in courts of appeals); United States v. Neset, 10 F. Supp. 2d 1113, 1114-15 (D. N.D. 1998) (stating that Communications Act gives courts of appeals exclusive jurisdiction to review the FCC's declaratory rulings as well as all policies, practices, and regulations adopted by the FCC).

[5]    As such, the court need not reach the substantive merits of the claims.

**II.  <u>Claim Four</u>**

The FCC contends that the court lacks subject matter jurisdiction over claim four which alleges that "the FCC's failure to provide efficient, reasonable and fair licensing procedures for LPFM radio stations is an abuse of discretion under the Administrative Procedures Act . . . ." (Complaint ¶ 59).  The court agrees.

As previously stated, challenges to FCC enforcement policies and procedures must first be brought before the FCC.  The Ninth Circuit has repeatedly upheld dismissal of claims challenging the FCC's policies and procedures for lack of subject matter jurisdiction.  <u>See</u> <u>United States v. Dunifer</u>, 219 F.3d 1004 (9th Cir. 2000) (holding that district court lacked subject matter jurisdiction under applicable statutory framework to decide challenges to FCC licensing regulations); <u>Wilson v. A.H. Belo Corp.</u>, 87 F.3d 393 (9th Cir. 1996)(affirming dismissal because 47 U.S.C. § 402(a) and 27 U.S.C. § 2342 vest courts of appeals with exclusive jurisdiction to review validity of FCC rulings); <u>Sable Commc'ns of Cal., Inc. v. FCC</u>, 827 F.2d 640 (9th Cir. 1987) (holding that district court lacked jurisdiction over action claiming that FCC regulation unconstitutionally restricted sexually suggestive telephone services).  Because plaintiffs challenge FCC licensing procedures in claim four, this court lacks jurisdiction over this claim.

Accordingly, the FCC's motion to dismiss claim four for lack of subject matter jurisdiction is GRANTED.

11

**III. <u>Leave to Amend</u>**

On June 29, 2005, subsequent to the filing of the complaint, plaintiffs received a "Notice of Apparent Liability for Forfeiture" ("NALF") from the FCC.[6]  The NALF assessed a civil monetary penalty against plaintiffs pursuant to § 503(b) of the Communications Act ("§ 503").  Both parties acknowledge that this administrative proceeding is currently pending before the FCC. The court notes nonetheless that as a result of this government action, there is now more than a "mere threat of action" by the FCC, and plaintiffs would have *standing* to raise a claim under § 503(b).  Ordinarily, the court would allow a party to amend its complaint in light of changed circumstances such as these. However, 28 U.S.C. § 2342(1) provides that "the court of appeals . . . has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of (1) all final orders of the Federal Communications Commission . . . ." As such, jurisdiction in this court does not lie.  The pending claims must proceed before the FCC in the first instance, and once finalized, can be challenged only in the court of appeals. 28 U.S.C. § 2342(1); 47 U.S.C. § 402.  Thus, the court does not grant leave to amend because despite constitutional standing to raise a claim under 503(b), this court, by statute, lacks jurisdiction to hear the claim.

---

[6]     Though defendant failed to request that this court take judicial notice of Exhibit A attached to its Memorandum of Points and Authorities, this court finds that it is a subject of proper judicial notice under Federal Rules of Evidence 201.

12

**CONCLUSION**

1

2        For the reasons set forth above, defendant's motion to

3   dismiss plaintiffs' complaint pursuant to Rules 12(b)(1) and

4   12(b)(6) is GRANTED.  The Clerk of the Court is directed to close

5   this file.

6        IT IS SO ORDERED.

7   DATED: November 8, 2005

8                                      /s/Frank C. Damrell, Jr.
                                       FRANK C. DAMRELL, Jr.
9                                      UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13